UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRUSTEES OF INDIANA UNIVERSITY, FRED H. CATE, and its research faculty, DR. BRUCE LAMB and DR. DEBOMOY LAHIRI, <br><br> Plaintiffs, <br><br> v. <br><br> PROSECUTOR OF MARION COUNTY INDIANA, in his official capacity, and PROSECUTOR OF MONROE COUNTY, in his official capacity, <br><br> Defendants. | Case No. 1:16-cv-1289-JMS-DML |

### ANSWER TO AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF/NOTICE OF CONSTITUTIONALITY OF INDIANA STATUTE

### PARTIES

1.      The Board of Trustees of Indiana University ("IU") is a body politic under the laws of the state of Indiana.  IU brings this action on its own behalf and on behalf of its affected employees and students.

**ANSWER:**    Defendants admit that the Board of Trustees of Indiana University is a body corporate and politic under the laws of the state of Indiana.  Defendants also admit that IU purports to bring this action on its own behalf and on behalf of its affected employees and students, but Defendants deny that IU has standing to do so.

2.      Fred H. Cate, J.D., is IU's Vice President for Research.  Cate is responsible for and has authority over all aspects of IU's research university-wide, including obtaining grant funding, research, compliance, scientific integrity, and administration of grants.

> **ANSWER:** Defendants admit that Fred H. Cate, J.D., is IU's Vice President for Research. Defendants deny the remaining allegations set forth in paragraph 2 of the Amended Complaint because they are vague and ambiguous.

3. Dr. Bruce Lamb, PH.D., is a professor of Medical and Molecular Genetics at the Indiana University School of Medicine. He holds the Roberts Family Chair in Alzheimer's Disease Research and serves as the Executive Director of Stark Neurosciences Research Institute ("Stark").

> **ANSWER:** Defendants admit the allegations set forth in paragraph 3 of the Amended Complaint.

4. Dr. Debomoy Lahiri, Ph.D., is a professor of psychiatry and a Primary Investigator for Stark Neurosciences Research Institute.

> **ANSWER:** Defendants admit the allegations set forth in paragraph 4 of the Amended Complaint.

5. Stark Neurosciences Research Institute is located in Marion County, Indiana. Faculty researchers from various academic departments of Indiana University are located in Marion County and Monroe County, Indiana.

> **ANSWER:** Defendants admit the allegations set forth in paragraph 5 of the Amended Complaint.

6. The Prosecutor of Marion County, Indiana, is the duly elected prosecutor of the county in which IU facilities that perform fetal tissue research are located and the prosecutor is responsible for prosecuting crimes occurring in Marion County. He is sued in his official capacity and is designated by his official title pursuant to Fed. R. Civ. P. 17(d).

**ANSWER:** Defendants admit the allegations set forth in paragraph 6 of the Amended Complaint.

7. The Prosecutor of Monroe County, Indiana, is the duly elected prosecutor of the county in which IU facilities that perform fetal tissue research are located and the prosecutor is responsible for prosecuting crimes occurring in Monroe County. He is sued in his official capacity and is designated by his official title pursuant to Fed. R. Civ. P. 17(d).

**ANSWER:** Defendants admit the allegations set forth in paragraph 7 of the Amended Complaint.

## JURISDICTION AND VENUE

8. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

**ANSWER:** Defendants assert that the Court's jurisdiction is limited by the Plaintiffs' lack of Article III standing and by principles of sovereign immunity. Accordingly, Defendants deny the allegations set forth in paragraph 8 of the Amended Complaint because they call for a legal conclusion.

9. This Court has jurisdiction over the state-law claims alleged herein under 28 U.S.C. § 1367.

**ANSWER:** Defendants assert that the Court's jurisdiction over Plaintiffs' state-law claims is precluded by principles of sovereign immunity. Accordingly, Defendants deny the allegations set forth in paragraph 9 of the Amended Complaint because they call for a legal conclusion.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**ANSWER:** Defendants admit the allegations set forth in paragraph 10 of the Amended Complaint.

11. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:** Defendants admit that 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure authorize declaratory relief, but deny that such relief is appropriate in this case.

12. This action is brought pursuant to 42 U.S.C. § 1983 to redress deprivation, under color of state law, of rights secured by the Constitution of the United States.

**ANSWER:** Defendants admit that Plaintiffs seek to bring this action under 42 U.S.C. § 1983, but deny that Plaintiffs are entitled to any relief under that statute.

## LEGAL AND FACTUAL BASIS FOR CLAIMS

13. Current Indiana law allows persons to knowingly or intentionally purchase or sell a fetus to be used for adult or fetal stem cell research. Ind. Code § 35-46-5-3(b), (c)(2) ("human organism statute").

**ANSWER:** Ind. Code § 35-46-5-3(b), (c)(2) ("human organism statute") speaks for itself.

14. While the term "fetus" is not defined within the human organism statute, elsewhere in Title 35 (Indiana's criminal law title), fetus is defined as "a fetus that has attained viability." Ind. Code § 35-31.5-2-132.

**ANSWER:** The human organism statute and Ind. Code § 35-31.5-2-132 speak for themselves.

15. Thus, the human organism statute permits a viable fetus to be used for adult or fetal stem cell research, whereas other prohibited uses of viable fetuses constitute the level five felony of "unlawful transfer of a human organism." Ind. Code § 35-46-5-3(b), (c)(2).

> **ANSWER:** The human organism statute and Ind. Code § 35-31.5-2-132 speak for themselves. Defendants deny any remaining allegations set forth in paragraph 15 of the Amended Complaint because they are vague and ambiguous and call for a legal conclusion.

16. The recently enacted Indiana House Enrolled Act No. 1337 ("Enrolled Act") leaves the existing human organism statute unchanged, but adds a second level five felony ("unlawful transfer of fetal tissue") for anyone who "intentionally acquires, receives, sells, or transfers fetal tissue," defined as "tissue, organs, or any other part of an aborted fetus." Ind. Code § 35-46-5-1.5 ("fetal tissue statute").

> **ANSWER:** The Enrolled Act—and specifically Ind. Code § 35-46-5-1.5 ("fetal tissue statute")—speaks for itself. Defendants deny any remaining allegations set forth in paragraph 16 of the Amended Complaint because they call for a legal conclusion.

17. That is, while one may lawfully purchase or sell an entire viable fetus for adult or fetal stem cell research, one may not, under the Enrolled Act, acquire, receive, sell, or transfer fetal *tissue*, whether or not the aborted fetus from which it derived was viable.

> **ANSWER:** The Enrolled Act speaks for itself. Defendants deny any remaining allegations set forth in paragraph 17 of the Amended Complaint because they are vague and ambiguous and call for a legal conclusion.

18. The fetal tissue statute is broader than the unlawful transfer of a human organism statute in three ways.

> **ANSWER:** Defendants deny the allegations set forth in paragraph 18 of the Amended Complaint because they are vague and ambiguous and call for a legal conclusion.

19. First, the fetal tissue statute applies to any part of an aborted fetus (including fetal tissue), rather than only an entire fetus. Second, the fetal tissue statute applies whether or not the fetus from which the tissue is derived is viable. Third, the fetal tissue statute contains no exceptions for stem cell research of any type.

> **ANSWER:** The fetal tissue statute speaks for itself. Defendants deny any remaining allegations set forth in paragraph 19 of the Amended Complaint because they are vague and ambiguous and call for legal conclusions.

20. Another difference between the statutes is that the human organism statute requires purchase or sale, whereas the fetal tissue statute is violated through sale as well as noncommercial transmissions, including acquiring, receiving, or transferring.

> **ANSWER:** The human organism statute and the fetal tissue statute speak for themselves. Defendants deny any remaining allegations set forth in paragraph 20 of the Amended Complaint because they are vague and ambiguous and call for legal conclusions.

### Indiana University's Fetal Tissue Research at Stark

21. IU and Dr. Lahiri currently conduct no research on whole, intact, fetuses from any stage of viability. IU and Dr. Lahiri do conduct research using fetal tissue that it acquires and receives from the Birth Defects Research Laboratory at the University of Washington ("U. Wa. Lab"). The U. Wa. Lab advises that fetal tissue is obtained from both elective abortions and miscarriages.

> **ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 of the Amended Complaint.

6

22. From that fetal tissue, Dr. Lahiri derives mixed cell cultures that form the basis of his research in Alzheimer's disease. Dr. Lahiri is involved with multiple ongoing collaborative research projects and educational initiatives, including the NIH-funded Alzheimer's Disease Center (one of 30 funded nationally). As one aspect of his research, Dr. Lahiri has done a great deal of work on biochemical contrasts between autism spectrum disorder (ASD) and Alzheimer's disease.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22 of the Amended Complaint.

23. Dr. Lahiri also derives mixed cell cultures from fetal tissue for use by collaborators across IU and at other institutions. That work is performed at Dr. Lahiri's laboratory.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the Amended Complaint.

24. IU and Dr. Lamb, as director of Stark, also possess in many of its laboratories "biologicals" (such as RNA, DNA, and proteins) that may potentially have been derived from fetal tissue. Some of these biologicals have been stored in a frozen state by IU for many years. It would be impossible to ascertain the initial derivation for most if not all of these biologicals.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Amended Complaint.

### Indiana University's Cell Line Research

25. Faculty researchers from various academic departments of IU perform research using various "cell lines," including NIH-approved lines.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25 of the Amended Complaint.

26. Upon information and belief, certain of those cell lines were initially derived from aborted fetal tissue. At least some of those cell lines have been in existence for over 40 years.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26 of the Amended Complaint.

27. IU currently estimates that approximately 20 faculty researchers are performing research using cell lines that are derived from aborted fetal tissue. These faculty are from the following academic departments: psychological and brain sciences, medical sciences, chemistry, public health, biology, medicine, pediatrics, and optometry.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Amended Complaint.

28. IU's research into whether additional faculty perform research using fetal tissue or derivatives of fetal tissue is ongoing.

**ANSWER:** Defendants admit the allegations set forth in paragraph 28 of the Amended Complaint.

29. IU is concerned that the fetal tissue statute will criminalize research performed using cell lines derived from aborted fetal tissue.

**ANSWER:** Defendants deny the allegations set forth in paragraph 29 of the Amended Complaint because they are vague and ambiguous and call for a legal conclusion.

### Indiana University's Vector Production Facility

30. One important and unique feature of the cells generated through these long-standing cell lines is the cells' ability to take up DNA at very high efficiency, allowing scientists to study genes within a cell. This quality has been recognized as key to the production of gene therapy products aimed at curing a large number of human diseases.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 of the Amended Complaint.

31. IU houses the IU Vector Production Facility ("VPF"). The VPF uses cell lines that were initially derived from aborted fetal tissue to create "gene therapy vectors."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 31 of the Amended Complaint.

32. "Vectors" are engineered by stripping viruses of their pathogenic DNA and replacing it with gene(s) that can replace defective genes or confer anti-cancer properties. Gene therapy vectors can only be manufactured in living cells and by far the most effective system available is the system based on the "HEK293" cell line.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 32 of the Amended Complaint.

33. Upon information and belief, the HEK293 cell line was derived from aborted fetal tissue.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33 of the Amended Complaint.

34. Many patients are currently treated for cancer and genetic diseases using gene therapy vectors.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 34 of the Amended Complaint.

35. For over 20 years, VPF has generated vector products to supply clinical material to patients throughout the US and Europe.

>**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35 of the Amended Complaint.

36. The IU VPF is recognized world-wide as a leader in gene therapy.

>**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 of the Amended Complaint. Furthermore, to the extent they are vague and ambiguous, Defendants deny the allegations set forth in paragraph 36 of the Amended Complaint.

37. NIH-funded research throughout the world relies upon vectors developed at VPF.

>**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37 of the Amended Complaint.

38. Manufacturers of gene therapy vectors are challenged to meet the demand for vectors because this technology allows a treatment option to a large number of patients who have no viable treatment alternative. Disabling VPF from manufacturing vectors using the HEK293 cell line would severely limit VPF's ability to manufacture vectors.

>**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 38 of the Amended Complaint. Furthermore, to the extent they are vague and ambiguous, Defendants deny the allegations set forth in paragraph 38 of the Amended Complaint.

39. The main goal of the NIH funding IU receives in connection with the VPF is to produce and ship vector to third parties for use in gene therapy research. The fetal tissue statute will require VPF to substantially limit or cease its vector production. This will result in significant loss of revenue and also will eliminate two decades of IU's leadership in this area.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 of the Amended Complaint. Furthermore, to the extent they are vague, ambiguous, and call for legal conclusions, Defendants deny the allegations set forth in paragraph 39 of the Amended Complaint.

40. There are a variety of circumstances under which IU, its faculty, Dr. Lahiri, VPF, or Dr. Lamb, as director of Stark, may need to "transfer" cells or biologicals that were derived from fetal tissue.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 40 of the Amended Complaint.

41. As a condition of most NIH grants, IU, its faculty, Dr. Lahiri, and Dr. Lamb, as director of Stark, must agree to retain the samples used in its research. IU, its faculty, Dr. Lahiri and Dr. Lamb, as director of Stark, must also agree to share those samples upon request with the NIH or other institutions that are interested in reproducing or authenticating IU, its faculty, or Dr. Lahiri's research results. If IU, its faculty, Dr. Lahiri, or Dr. Lamb, as director of Stark, are unable to comply with NIH's requirements with respect to sharing tissue samples and/or cells derived from such samples for purposes of affirming the reproducibility of research results without violating Indiana law, IU, its faculty, and Dr. Lahiri's eligibility for NIH funding is likely to be severely limited. IU, its faculty, and Dr. Lahiri may also potentially have to refund millions of dollars in existing research grants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41 of the Amended Complaint. Furthermore, to the extent they are vague, ambiguous, and call for legal conclusions, Defendants deny the allegations set forth in paragraph 41 of the Amended Complaint.

42. When researchers join or separate from IU, they transfer their laboratory materials with them. Therefore, even were IU faculty to stop doing research in the state of Indiana as a result of the Enrolled Act, they run the risk that the mere act of transferring his research to another institution would constitute a felony.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 42 of the Amended Complaint. Furthermore, to the extent they call for legal conclusions, Defendants deny the allegations set forth in paragraph 42 of the Amended Complaint.

43. IU is required in some circumstances to transfer materials, that may include cells or other materials derived from fetal tissue, in connection with legal obligations to the Office of Research Integrity of the United States Department of Health and Human Services.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 43 of the Amended Complaint.

44. At the most literal level, IU, its faculty, Dr. Lahiri, and Dr. Lamb, as director of Stark, must "transfer" fetal tissue within and among its laboratories. And, as a stated expectation of the VPF grant, IU is expected to ship vector to third parties for use in gene therapy research.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44 of the Amended Complaint.

45. IU, its faculty, Cate, Dr. Lahiri, and Dr. Lamb, as director of Stark, are unable to discern which, if any, of their current research activities, are prohibited by the Enrolled Act. To the extent the Enrolled Act criminalizes ongoing research, it impairs IU faculty's academic freedom to perform research into important matters of public health.

> **ANSWER:** The Enrolled Act speaks for itself. Defendants deny any remaining allegations set forth in paragraph 45 of the Amended Complaint because they are vague and ambiguous and call for legal conclusions.

46. The Enrolled Act by its terms does not apply to material derived from embryonic stem cells that do not come from an aborted fetus.

> **ANSWER:** The Enrolled Act speaks for itself.

47. The Enrolled Act's burdens on IU, its faculty, Cate, Dr. Lahiri, VPF, and Dr. Lamb, as director of Stark, far outweigh any benefit to the State of Indiana.

> **ANSWER:** Defendants deny the allegations set forth in paragraph 47 of the Amended Complaint.

48. Cate and Dr. Lamb are responsible for attracting research faculty to IU and IU's Stark Neurosciences Research Institute. They have significant concerns that the Enrolled Act's limitations on academic research using fetal tissue and cells derived from fetal tissue will deter potential candidates from coming to Indiana to join IU and Stark.

> **ANSWER:** Defendants admit that Cate and Dr. Lamb have expressed the "significant concerns" set forth in paragraph 48 of the Amended Complaint. Defendants deny the allegations underlying those concerns—and any remaining allegations set forth in paragraph 48 of the Amended Complaint—because they are vague and ambiguous.

49. In addition, Cate and Dr. Lamb believe that the negative impact on IU and Stark's research would be dramatic and lead to difficulties in renewing the NIH-funded Alzheimer's Disease Center that would be catastrophic for both Stark and research more generally at Indiana University and the Indiana University School of Medicine.

**ANSWER:** Defendants admit that Cate and Dr. Lamb hold the "belie[fs]" set forth in paragraph 49 of the Amendment Complaint. Defendants deny the allegations underlying those beliefs—and any remaining allegations set forth in paragraph 49 of the Amended Complaint—because they are vague and ambiguous.

50. Cate, Dr. Lamb, and Dr. Lahiri also believe that the Enrolled Act will slow the pace of research using fetal tissue, which could delay an important breakthrough in treatments and cures to patients with a variety of debilitating neurological and other disorders.

**ANSWER:** Defendants admit that Cate, Dr. Lamb, and Dr. Lahiri hold the "belie[fs]" set forth in paragraph 50 of the Amended Complaint. Defendants deny the allegations underlying those beliefs—and any remaining allegations set forth in paragraph 50 of the Amended Complaint—because they are vague and ambiguous.

## LEGAL CLAIMS

51. The Enrolled Act's criminalization of acquiring, receiving, selling, or transferring fetal tissue is unconstitutionally vague.

**ANSWER:** Defendants deny the allegations set forth in paragraph 51 of the Amended Complaint.

52. The Enrolled Act's restrictions on acquiring, receiving, selling, or transferring fetal tissue place an excessive burden on interstate commerce which is not outweighed by any benefit of the Enrolled Act.

**ANSWER:** Defendants deny the allegations set forth in paragraph 52 of the Amended Complaint.

53. The Enrolled Act's restrictions on acquiring, receiving, selling, or transferring fetal tissue violate IU faculty's and Dr. Lahiri's First Amendment right to academic freedom with respect to research on matters of public concern.

**ANSWER:** Defendants deny the allegations set forth in paragraph 53 of the Amended Complaint.

54. The Enrolled Act's restrictions on acquiring, receiving, selling, or transferring fetal tissue violate the IU faculty's and Dr. Lahiri's rights to equal protection under the 14th Amendment of the United States Constitution.

**ANSWER:** Defendants deny the allegations set forth in paragraph 54 of the Amended Complaint.

55. The Enrolled Act's restrictions on acquiring, receiving, selling, or transferring fetal tissue violate IU faculty's and Dr. Lahiri's rights of free interchange of thought and opinion and their rights to speak, write, and print freely under Article I, Section 9 of the Indiana Constitution.

**ANSWER:** Defendants deny the allegations set forth in paragraph 55 of the Amended Complaint.

56. The Enrolled Act's restrictions on acquiring, receiving, selling, or transferring fetal tissue violate IU faculty's and Dr. Lahiri's rights to liberty and pursuit of happiness under Article I, Section 1 of the Indiana Constitution.

**ANSWER:** Defendants deny the allegations set forth in paragraph 56 of the Amended Complaint.

57. The Enrolled Act's restrictions on acquiring, receiving, selling, or transferring fetal tissue violate IU faculty's and Dr. Lahiri's rights to equal privileges and immunities under Article I, Section 23 of the Indiana Constitution.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 57 of the Amended Complaint.

58. To the extent that the Enrolled Act prohibits transfers of fetal tissue in connection with IU's obligations under the authority of the federal Office of Research Integrity, it is preempted by 42 U.S.C. § 289b and other federal regulations.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 58 of the Amended Complaint.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Declare House Enrolled Act 1337 is unconstitutional to the extent it:

   a. Criminalizes intentionally acquiring, receiving, selling, or transferring fetal tissue used for research purposes.  Ind. Code § 35-46-5-1.5.

3. Declare House Enrolled Act 1337 in part preempted by federal law.

4. Enter a preliminary injunction, later to be made permanent, against defendants from enforcing Indiana Code Ind. Code § 35-46-5-1.5 (eff. July 1, 2016).

5. Award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

6. Award all other proper relief.

**ANSWER:**  Defendants deny any factual allegations set forth in paragraphs 1 through 6 of Plaintiffs' "Request for Relief" and deny that Plaintiffs are entitled to any of the relief requested therein.

## AFFIRMATIVE DEFENSES

1. One or more plaintiffs lack standing to prosecute this case.

2. One or more claims asserted by Plaintiffs are not suitable for adjudication under Article III of the United States Constitution.

3. One or more claims asserted by Plaintiffs fail to state a claim upon which relief can be granted.

4. Plaintiffs' rights, privileges, and immunities secured under the Constitution or the laws of the United States and the State of Indiana have not been violated by any alleged action, inaction, or omission of Defendants, who at all times have acted in compliance and consistent with the Constitution and laws of the United States and the State of Indiana.

5. The challenged statute(s) are neither unconstitutionally vague, in contravention of the Commerce Clause, nor preempted by federal law.

6. No party has a cognizable right to academic freedom at stake.

7. The challenged statute(s) draw no unlawful classifications under the Fourteenth Amendment.

8. Plaintiffs' state constitutional claims are barred by sovereign immunity and the Eleventh Amendment and in any event are without merit.

Defendants reserve the right to raise further affirmative defenses in the future as needed or warranted by investigation or discovery.

        Respectfully submitted,

        GREGORY F. ZOELLER
        Indiana Attorney General

        *s/Thomas M. Fisher*
        Thomas M. Fisher
        Solicitor General

        Heather Hagan McVeigh
        Kenneth Biggins, Jr.
        Deputy Attorneys General

        Office of the Attorney General
        302 W. Washington St., IGCS 5th Floor
        Indianapolis, IN 46204-2770
        Phone: (317) 232-6255
        Fax: (317) 232-7979
        Email: Tom.Fisher@atg.in.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on June 27, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

    A. Scott Chinn
    Anne K. Ricchiuto
    Juliana Yanez
    FAEGRE BAKER & DANIELS LLP
    scott.chinn@faegrebd.com
    anne.ricchiuto@faegrebd.com
    juliana.yanez@faegrebd.com


                                        *s/Thomas M. Fisher*
                                        Thomas M. Fisher
                                        Solicitor General


Office of the Indiana Attorney General
302 W. Washington Street
IGC-South, Fifth Floor
Indianapolis, Indiana 46204-2770
Phone: (317) 232-6255
Fax: (317) 232-7979
Email: Tom.Fisher@atg.in.gov